0 Opposing counsel is not here. He's going to at Hamilton. This way just one like what thought you yesterday and that motion as and motion and motion I guess we have to let you go ahead. May it please the court. The matter before you … The first part between the policy holder and its insurance company. The policy holder is AIC American holdings. The matter is from a hail storm that occurred around the Dallas metro area in July, on July 8, 2009. Briefly, by way of background if I may, this was a property that was bought by Hamilton Properties, it is a hotel and it is, it was owned as of 2006. The property operated as a hotel until the beginning of 2009 at which time it was shut down but there was a caretaker that maintained the property, his name is Thomas Coughlin, he was a key in this matter. He stayed within the property during the time that the hail storm took place. After the hail storm took place, he reported that there was damage. Frankly, Mr. Hamilton, who was the owner of Hamilton Properties, the plaintiff in this case, wasn't aware of the extent of the problem. He ended up reporting it February of 2011 and then it was denied after he had an expert involved on his end at the end of 2011. Now, the issues in this case for the court are two-fold as to the breach contract. Number one, the claim made by the defendant in this case is what was a basis for the summary judgment motion that was granted by Judge Boyle in Dallas Federal Court a couple years back. And what the first issue was, was whether there could be a proper segregation of damages by Hamilton Properties. Namely, would they have the ability to show that there was certain damage, any modicum of damage, caused by the storm that took place on July 8, 2009. Now, the second issue that comes up is whether or not because of the amount of time that transpired between the storm date, which was 7-8 of 2009, and the actual reporting date, which was early 2011, if that resulted in prejudice under the policy. Now, there's also, there were extra contractual claims made. Those had been disposed of by the court. However, those were generally linked to the reasoning of Judge Boyle that because there was no breach of contract, there would then not be a derivative opportunity to show bad faith. Our position in this case, Your Honors, is that because there was a material issue of fact, there was evidence that would show that there was damage due to the storm, and because there were concessions, specifically on the record, by Paul Blanchard, and who is the large loss consultant for AIC, and also because it was Mr. Chris Wooten, who was also a representative of AIC, they both indicated that they were able to do exactly what they would normally do throughout their process, and that they had not claimed that there was any prejudice. They said what they had claimed was there was no damage. The specific wording, Your Honors, was that, I ask, and it's in the record, what were you claiming that there was prejudice? The answer was no, because there was no damage, meaning that we weren't precluded from determining what it was from, because we didn't find that it existed at all. They're not the people that speak on behalf of the company as to whether there's prejudice, right? Isn't that what the other side argues? Judge Elrod, it is, and frankly, that exact language is included within Judge Boyle's order. Here is why the plaintiffs feel that that was an incorrect ruling. You have two different individuals, Your Honors, who are testifying on behalf of American Insurance Company. The first one is Mr. Paul Blanchard, who was the large loss regional general adjuster. He talked about the fact that a date of reporting didn't essentially kill every cat in the alley, so to speak, it looked with prejudice. He said that in the record on ROA 863 at lines five through eight. He also continued to say that they were able to do exactly what was needed. This is ROA in the record 867 through 872, and specifically, answering in the affirmative of that, Your Honors, on page 872 of the record, lines nine through 11. Now, in this matter, they claim that there was no damage. There has been segregable damages from the plaintiff in this case. Specifically, I had referenced earlier, Your Honors, Mr. Tom Coughlin. He was an individual who stayed there as a caretaker, frankly, to prevent things like vandalism, et cetera, to maintain the property, or to give notice if there's an issue of it, which he did in this case, during the times after it ceased functioning as an actual hotel. Now, the hotel remained, but it wasn't functioning as a hotel. He testified that during the time that he was there, which included months prior to the actual July 8, 2009 storm, he had had opportunities periodically and consistently to be able to see not just the different floors to determine if there's damage, but he also specifically looked at the 12th floor. Now, that's important, because I'd submit to this court that because you have a 12-story building here, the 12th floor, it would be the first floor to be immediately affected by damage that would be coming through from the roof. Now, he testified as to showing this damage to the tiles. He testified that there was damage to the additional part of the structure. I would direct the court to the record, page 894, lines 4 through 18, where he talked about new drippings in an area that previously didn't have those. He also specifically talked about the damage to the ceiling tile in the record, page 895, of line 16 through 23. Now, what's most important, we think, about this is that not only did they specify damage, but he drew a distinction between what was there now and what was there previously, which was nothing. And he made that distinction on 896 in the record, lines 5 through 9. Now... I don't understand. If the people that looked at it, Paul and Chris Blanchard and Wooten, said there weren't damages, but there is now some damage, and people think that there's some damage, then why aren't they prejudiced? Because you can't tell what of the damages there now were caused back in 2009. Judge Elroda, I understand completely, and frankly, the law does speak to that issue. When you talk about prejudice, there were two specific matters talking about the purpose of what is meant by prejudice. And it's the ability, it doesn't want to affect the ability to do a proper investigation. Judge, if I may, the Blanton v. Vesta case, which is 185 Southwest Surge 607, and that's actually cited in the record on page 1831 of the record, that says that timely notice purpose is to allow for a proper investigation. Your Honor, this went beyond just asking the individual, were you prejudiced at all? As to which, the gentleman you'd referenced, which was Mr. Wooten, said no. But it actually went further than that. When talking to Mr. Blanchard, who was a large law suggester on this, Your Honor, we tackled that very issue that the court pointed out with its concern as to, why couldn't that have changed? Why wouldn't they be prejudiced? Specifically, they talked about what they would do in the event that there was an investigation to look at the property and consider all the surrounding activities and people's perspectives, et cetera, that you'd want to. From a claims handling perspective, they want to talk to the individuals. They want to evaluate the property. They want to do a firsthand inspection, consider the areas that were damaged, et cetera. Specifically, specifically, Mr. Blanchard would ask if he was able to do all that was needed. And on page 872 of the record, lines 9 through 11, he specifically said that, yes, they were. And he also said that, again, the date of the reporting didn't, I would say the word, kill every cat in the alley. It wasn't dispositive of the issue. That was noted on lines 5 through 8 on page 863. OK, I'm still confused. Because in order for you to win, ultimately, you have to establish that there were damages at the time of 2009. So you're not relying on their assessment that there wasn't damage to begin with. So you have to look at it after the fact. And as a district court reason, there is some evidence that the damage that is now present was over a period of time. So how do we know it was not in 2010? The standard, Your Honor, was that whether we could show that there was damage that was specifically attributable to the storm versus something that would be falling within the language of an exclusion, like wear and tear or mechanical damage. Specifically, Your Honor, that has been accomplished in this case. Mr. Tom Shingler, who was the expert for the plaintiff in this case on an engineering standpoint, was able to look at the roof. And when he did, he found that there was damage to the cants, which are the areas that are the peripete walls, which are the abbreviated walls that surround the same structure. He was able to find that. And it correlated down below with what was seen right after the storm by Mr. Coughlin. So what you have here is you have an engineer who went up there, talked to everybody, met with Mr. Coughlin, who was the eyewitness on the 12th floor after this occurred, and was able to say, yes, that's damage that relates to it. But it's more than that, because the- But he didn't get to talk to Mr. Coughlin in a timely manner. Mr. Coughlin, it's been years. And if you're relying on that, why doesn't that matter? Well, there are two things going on here. Number one, Mr. Coughlin, when he was deposed, it was years after, indeed. However, there was testimony in this case that after he had seen this, he had talked to the individual who was, I believe, Ashley Farhad, which was on the court's record at page 886, lines 20 through 22. And he actually explained the same thing to her as he did in the record during the deposition. So the fact of the matter is, the perspective hadn't changed. And your honors, I would submit it was a very vivid perspective. This was an individual who talked about, not only is he the only one there at that time, which would be a bit daunting, but also he talked about the sound of the hail. He talked about seeing the hail, the size of it when he saw it on the balconies, because these do have balconies. And then he talked about immediately thereafter, walking through the 12th floor and seeing things that hadn't existed before. Those were the recounts that he gave to Ms. Farhad back after it happened. And that's what he testified to in his deposition. Remind me, is there a doctrine of presumed prejudice at a certain amount of time in these cases? My reading of the cases, your honor, is that certainly it's enhanced as time goes on, absolutely. But in this case, they have said that they weren't claiming that. And also, there was evidence to show that they were allowed to do these same inquiries, the same investigation they would be able to. I mean, indeed, Mr. Wooten himself said, yes, I'm saying as the individual here, who was under oath at the time, he said that there was no prejudice being claimed. And he also said something else that I should have remarked on before. On pages 926, lines 1 through 6, he said, any disclaimer of coverage would be through me. I asked if they were making that claim. He said, no. It wasn't a matter of we're prejudiced at all. It's a matter of we went out there, and then we didn't find any damage. Now, this is a troubling position, Judge Elrod, for the following reason. Originally, they said there's no damage. And then what happens is this. Things morph as we have evidence that there was damage. They reverse field, and they make the statement that now it is a situation where, OK, there may have been damage, but it would have been before. That falls in line with the evidence from the expert, from Mr. Shingler. And I submit to you, and the court correctly found that there had been testimony that, yes, when we don't have a brand new building, your honors, when we don't have a brand new building and a hail claim the next day, there's always going to be wear and tear, just like, frankly, I'd submit that there's wear and tear on me after the years. But the fact of the matter is, this had evidence that could distinguish it. And one other thing, your honor, that I think shouldn't be overlooked. The expert for the defendant in this case, a gentleman named Brett Lockridge, actually went out there, and Brett Lockridge made the remark that damage to the parapets on the top of the parapets existed and didn't just exist. I'm sorry, your honor. Would have been consistent with the hail. I'd like to point that out for the record. That was on pages 934 and 935. But didn't you have an expert to say that there were damages that could have been caused by things other than hail? Didn't you have an expert who said that? Yes, there will be an expert in the case for us. There is an expert in the case, Judge Graves, that said there is wear and tear to a building, of course. It's not a brand new building. But there's also discernible evidence to show that there is damage from this specific event. And it was on the top to the parapets. But then you have a problem of trying to distinguish damage which was caused by hail from all the other damage of wear and tear and failure to maintain, maybe, and all those other things, compounded by the fact that it was you who failed to report it for some 19 months. If I may address that, Judge Graves. All right. In every single case, and I've just tried one last week, there's going to be an element of distinguishing damages between what previously existed and what's at issue because of the loss at hand. That is a matter of a jury at a trial hearing evidence on that and making that determination. The question is, in a de novo review of a summary judgment before this honorable court, the question is, was there a scintilla of evidence that we could point to something saying, OK, even if there's wear and tear, there is something here, namely issues with the parapet, as conceded by the defendant, or issues about the cants, which affected the interior damage, as reported by Mr. Shingler and Mr. Snuggs, are there those issues that give rise to a material issue of fact? There are, Judge Graves. And the fact of the matter is, while we do have the burden of distinguishing that at trial, the fact here is, there is a material issue showing competing positions by experts, one of which being that there was damage from that hailstorm, Your Honor. And with that, I see that I have three seconds left. I'd reserve five minutes, if I may. Thank you. Thank you. Ms. Martin. Good morning. May it please the court. Jennifer Martin, and I represent the appellees in this case. As Mr. Hunsiker told you, this is a case with two major issues, one being, was there proper notice? And prejudice as a result of there not being proper notice that relieved the insurance company from any obligation of the contract? And also, the plaintiff's, in this case, burden to show concurrent causation, did they adduce enough evidence to prevent the court from granting summary judgment in the defendant's favor? Let me address the notice issue first. First of all, notice in this case was not prompt as a matter of law. The insured tries to make an issue of, well, we did it earlier than what the defendant said, but still, as the lower court held, 19 months as a matter of law is not prompt. Judge Elrod, you asked whether that creates a prompt presumption of prejudice. I don't believe that it does. I believe that an insurance company is always required to show prejudice, but I believe in this case, despite what Mr. Hunsiker argues, it is clear. He tries to make a fact issue from saying, well, the adjuster testified that these are all the steps, generally, that he would conduct in an investigation, and he was able to conduct all those steps. But I would submit, as I believe the district court held, it's not the steps themselves that matter. It's the information available along that way, both quantity and quality. And I believe that the summary judgment evidence was clear that both were lacking. The witnesses that would have been available to determine what the extent of damage was. What witnesses are these? What summary judgment evidence do you have on that? Yes, Your Honor, we submitted evidence that there were, I don't remember the number now, but six or seven, maybe eight other individuals who also, in addition to Mr. Coughlin, lived in that property at the time and would have likely had knowledge and been able to be interviewed. But that became impossible for AIC to do because those folks moved away before the claim was reported. They weren't even disclosed that they ever even existed until we were well into litigation. And at that point in time, when we inquired of contact information for those individuals, we were told that they had none. So critical witnesses disappeared and were left only with the years after the fact testimony of Mr. Coughlin. That was not, he was not disclosed during the time that even the claim was being investigated. It was not until we were in litigation that we received what Mr. Coughlin's years after the fact recollection of it was. But why isn't there a fact issue on the prejudice? Because of the statements. The statements are really bad for you that by Mr. Blanchard and Mr. Wooten. And that's unusual to have that in one of these cases. I mean, we have a lot of these kind of cases. Don't you think those are uniquely bad? I would agree that they're unique to the case, but, Your Honor, let me explain. What Mr. Blanchard said was he was able to go through all the steps. But, Your Honor, I think if we look back to the original denial letter before there was litigation at what they said, I think that's instructive on the proper context for this testimony. When the claim was denied in that letter from February 16, 2012, they first noted that there was an underwriting inspection 19 days after the claim date of loss where the roof was noted to be in good condition. They noted that there were wear and tear issues and that their roofing consultant not only had not found hail damage when inspecting during the claim, but he also noted this patch that was on the roof that was directly above the area with the greatest interior damage. The letter also noted that there were hail events that could have caused any hail damage being asserted by the plaintiff that occurred both before and after this very short window of coverage. Literally, there is seven months and a few days worth of coverage on this that the damage would have had to have occurred in, again, two and a half years before the claim is being examined. And they say, quote, the late reporting of this loss severely prejudiced our investigation. That was the company's position all along. Mr. Blanchard saying these are the steps that I would go through is not an admission that he was able to gain the type of information necessary to reach that conclusion. And his letter to the insured says that he was not able to reach that conclusion. Mr. Wooten's statement that he wasn't claiming prejudice because he thinks there's no damage, I mean, that doesn't make logical sense because their roofing consultant that went out found no hail damage. It would say, but if there was, we sure would be saying there is. I mean, regardless of whether the evidence is going to be overwhelming a trial that there really was prejudice, isn't there some evidence in the record that they weren't, that your client wasn't prejudiced, some evidence? I would say there's not more than a scintilla because I think you have to take those statements very out of context. And I think that they do not, standing alone, and they would have to, create a fact issue. I don't believe the evidence in the record is such that a jury would be able to find that there was not prejudice. Now, it's your position that you win, even if there is a fact issue on that. Yes, Your Honor. You'll get some of your judgment. Do you want to address that claim? Yes, ma'am. So the other issue is concurrent causation. Much of what the plaintiff points to would fall under what we say more often in the scientific world. Correlation is not causation. And so the fact that Mr. Coughlin says, well, I started noticing leaking right after, is not truly the evidence that they need. What they need is their expert to be able to say, this damage was caused by this hailstorm, and not anything else. This is the cost to repair the damage from this hailstorm. They don't have that. Mr. Hunziker does point to things that his expert pointed out that he believes were caused by that hailstorm. But in the record, also, is the same expert admitting that given the evidence of additional hailstorms, which he didn't investigate and didn't consider, that he can't rule those out as the cause. He also admitted that this large patch that, again, was noted by the company originally when they inspected for the claim and then denied, that that was a potential source that he could not rule out. That, coupled with the same expert's testimony that the timing of the damage that Mr. Coughlin says years after the fact that he observed just within days, that that would suggest that it's unlikely that storm and is likely a prior storm. And that creates the obligation in this insured to segregate the damages, which was not done. One thing that I believe always gets lost in these cases is we focus very much on can the insured show coverage. But the real question is breach of contract. This insured has filed a claim for breach of contract. Thus, they must show that there was not just a loss, but a payable loss. That means a loss exceeding the policy's deductible. There's no evidence of that. And then finally, as to the question of the extra contractual damages. I hear plaintiffs to be saying that it matters only whether they show a breach of contract or not and because they believe they show a breach of contract, I will say that they can go on to their extra contractual claims. When their briefing suggests that they've shown extreme conduct, I believe there's no evidence of that in the record. But the other thing fatal to any extra contractual claim, regardless of whether there's a breach of contract or not, is an independent injury, which the trial court found there was no evidence of. So I believe regardless of whether they created a fact issue on their breach of contract, their extra contractual claims would still fail for lack of an injury to support those. Is the worsening of the roof not an independent injury? Well, one, Your Honor, I don't know that there's evidence of the worsening of the roof post the time that the claim was adjusted. The evidence in the record, I believe, is that there was a worsening of the roof between the time that the damage allegedly occurred and when the claim was reported and finally investigated, which, of course, I believe is additional evidence of prejudice to the insurer, that clearly their own expert admitted we can't know what the damage looked like at that point in time. But if there were evidence in the record that there was a worsening of the roof, that would be the type of evidence that would support extra contractual claim, right? I believe if the plaintiff could show causation on that point, that because the claim was not paid, that caused it to get worse, I believe, in those situations. And I've been waiting for case law to actually directly address that. But I believe an insurer would have to show that because the claim was denied, they were unable to make any repairs. I think in this case, and I can't recall if it's in the summary judgment record because the issue really wasn't pushed that direction, but I will tell you that Mr. Hamilton's testimony was consistently that they were doing nothing with this hotel because it wasn't operational. And quite frankly, they knew that they were gonna get the thing and remodel it, and so they were not maintaining. In fact, I know that testimony is in the record, that they were doing nothing to maintain the building because they were planning on an entire revamp, they weren't required to do anything, essentially weren't gonna spend any money on that because it was, for all intents and purposes, vacant. Mr. Coughlin and the other individuals that lived there for a while did so rent-free in order that they could keep vagrants out of the building, which was a problem as this property is on the edge of downtown Dallas. So I don't believe that there would be that kind of evidence, and I think to the contrary, the summary judgment record supports that the insured was not damaged because of the denial. Does the 542 claim rise or fall with the merits of this, whether we affirm or not? Yes, Your Honor, the 542 claim specifically requires that there be a claim the insurance company is required to pay. The penalty interest is calculated based on what should have been paid when it was paid, and so there's no evidence of a breach of contract, a payable claim, and there can be no 542 claim. But if for some reason we thought there was a fact issue on the notice and you didn't win on the other claim, then we would also have to send the 542 claim back, right? If the court concluded that there was a fact issue both on the concurrent causation question and on the notice prejudice question, then yes, Your Honor, the 542. The rest of them would have to send back, though. Only that one, right? Correct, Your Honor. The insured duty is not appeal, and you just explained why the other one doesn't work. I'm just trying to get through all the other claims. So the fiduciary duty claim was not appealed. The fraud claim was not appealed. The misrepresentation claims were not appealed. The statutory bad faith claims under 541, and I believe there's a DCA claim in this one, and possibly a common law bad faith claim. Those would all be ones that would go to the argument I was making about there's no independent injury resulting from those, and so, therefore, those claims can't survive. That would be the basis for those. Okay, thank you. If the court has no other questions for me, then I'll give you some time back. Thank you. Thank you. Sons of Garrett. May I proceed, Your Honor? Your Honor, one issue that we didn't get to address during the first 15-minute segment was the independent facts in regard to the bad faith claims. Now, the court had just pointed out in speaking with opposing counsel that there were some matters that were not appealed, such as fiduciary duty and, I believe, some of the fraud-based claims. However, in addition to the 542 claim, the late payment matters, there were also independent facts submitted that go beyond the actual breach of contract and speak to things well beyond issues of whether or not there was prejudice and issues of whether or not the concurrent causation was defeated. And, specifically, that was in regard to the testimony that had been supplied by the individuals from AIC, American Insurance Company, when they talked about, specifically, getting back to Mr. Blank... Talking to a gentleman named Mr. Weissman, who had been out there originally. He had came out and done an inspection in which he believed that there was minimal to no damage or that the roof was in good condition. This was back in 2009, and then when they did their inspection later, he went back and he asked him to come back out there to find the same things. We've submitted that because that's not only in the testimony as explored under direct examination, but also you have correspondence, Your Honour, and this is actually at page 930 of the record, paragraph two, in which he's asking him, can you please come back out and, frankly, find that it's still in good quality again, that it's in good condition. That is an attempt to... Our position is an attempt to bolster their original conclusions, even after they have testimony to the contrary. And I would also submit, Judge Elrod, in regard to your question about independent damage, I believe it was right on point with the idea that you can have continuing damages on the wear and tear side or a worsening of the covered areas that we've talked about, as Mr. Shingler and Mr. Snuggs testified to, that actually had been proved up by the defendant themselves. Do you actually have specific evidence that the roof worsened during the relevant time period in the record, and where is that? It would be actually within the testimony of Mr. Coughlin, who had testified originally that he had seen it and that it didn't exist prior to the storm of 7-8-2009, but it did and worsened afterwards, and I believe I had quoted those areas previously. That's not the same thing as it... after it was adjusted and then the time period at which... It doesn't... You can't just say, and it exists now. It has to be at the point after which it was adjusted and not paid. I understand, and I think... And just to make sure that I'm dialing in on this correctly, Judge Elrod, the court's asking me, after they've already made their determination, what additional damages were there that would be unique to the time period subsequent to that decision? Exactly, and is there evidence in the record of that? And I stand by what I said before. I believe there is, because I believe it's going to be the identical testimony that talked about the worsening after it happened. OK, do you agree that National Union Fire Insurance versus Puget Plastics Corporation correctly deals with Texas law? And, Your Honor, right now I'm having... The three matters I had, I had a hard time remembering that one. OK, the reason I'm mentioning it is this is the case that says, failure to provide evidence upon which a jury or court can allocate damages between those that resulted from covered perils and those that did not is fatal to an insured party's claim. It's quoting National Union Fire Insurance, and that's... I'm wondering whether or not you agree that that is an adequate statement of Texas law. I believe, yes, and I believe the spirit of that's correct, but under the summary judgment evaluation, we were able to overcome that by having specific testimony from our experts that actually show exactly what damage had been caused by the storm on 7-8 of 2009, and that's versus the wear and tear and the additional issues that were part of the exclusion under the policy language and part of the banner being campaigned upon by the defense in this case. OK, so you think the district court is just wrong that... And we all can be wrong that you don't have evidence allocating the damages? Absolutely, and the reason they're wrong is because that testimony doesn't just come from Mr Coughlin, but also from Mr Shingler, who identified the area on the top that correlated with that interior damage, and Mr Snuggs, who actually had it in his report, and for the court's record, that actual report was on 1705 and 1709 and 10 of the actual court record. And with that, I see that I'm out of time. If the court has any further questions... Sir? Thank you for your time, Your Honour.